UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| A CORP. d/b/a ROOTER MAN ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> A Best Sewer & Drain Service, Inc., and ) <br> Guy Joseph Lavenia Sr., ) <br> Defendants ) <br> ) | CIVIL ACTION NO. <br> 05 CA 11655 NMG |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
APPLICATION FOR A JUDGMENT BY DEFAULT PURSUANT TO RULE 55(b)(2)**

NOW COMES the Plaintiff A Corp. d/b/a ROOTER MAN ("Plaintiff") in the above captioned matter and respectfully submits the following memorandum in support of its Application for a Judgment by Default Pursuant to Rule 55(b)(2).

**INTRODUCTION**

This is an action filed by Plaintiff against Defendants A Best Sewer & Drain Service, Inc. ("Defendant A Best"), and Guy Joseph Lavenia Sr. ("Defendants") for willful infringement of Plaintiff's federally registered name/marks of *ROOTER MAN* and/or *A ROOTER MAN*, which obtained incontestable status. After the Complaint was filed on or about August 10, 2005, the summons and copies of the Complaints were duly served on both Defendants on or about December 5, 2005. Although Defendants contacted Plaintiff, through their attorney Michael D. Carbo, Esq., on or about January 9, 2006 requesting extension to file their answer and were granted an extension to January 31, 2006, they failed to file any document with the Court more than five (5) months after the service of the summons and the Complaint. Additionally,

Defendants' attorney ceased communication with Plaintiff's attorney after the initial contact on or about January 9, 2006. Plaintiff subsequently moved for entry of default. A default was entered on or about March 28, 2006.

## RELEVANT FACTS

1. In or about January, 1981, Rooter Man Corporation, started to use the name and marks of *ROOTER MAN* and *A ROOTER MAN* to offer ROOTER MAN franchises that provided plumbing, sewer, and drain cleaning services in the Commonwealth of Massachusetts and interstate commerce.

2. Plaintiff was incorporated under the name of A Corp in March, 1982 as the assignee of the franchise business of Rooter Man Corp. and has continuously promoted sales of the ROOTER MAN franchises in the United States and worldwide since 1982.

3. Through its active use of the *ROOTER MAN* and *A ROOTER MAN* names and marks through the United States and worldwide, *ROOTER MAN* and *A ROOTER MAN* name/marks have become distinctively identified in the trade with Plaintiff and, in particular, with its growing reputation for plumbing, sewer, and drain cleaning services that its franchisees provide. To date, Plaintiff has been named, for the fourth (4th) consecutive year, number one franchise in the category by Entrepreneur Magazine and has been ranked number nine (9) out of the top thirty (30) New England franchises.

4. In August, 1988, Plaintiff hired Thomson & Thomson, through its attorney, to fully search any federally registered name/marks and common law name/marks that are identical or substantially similar to the *A ROOTER MAN* and *ROOTER MAN* name/marks. The report of Thomson & Thomson did not indicate any adoption or use of *ROOTER MAN* or *A ROOTER MAN* name/marks by Defendants by August, 1988.

5. To protect its substantial investment in the *ROOTER MAN* and *A ROOTER MAN* marks, Plaintiff applied for federal registration of the marks in 1990 and obtained the registration of the *A ROOTER MAN* mark on the principal registration of the United States Patent and Trademark Office ("USPTO") on or about August 20, 1991. (Reg. No. 1,654,512). In addition, Plaintiff obtained registration of the *ROOTER MAN* mark on the principal registration of the USPTO on or about September 3, 1991. (Reg. No. 1,655,782). *Attached hereto as Exhibit 1 are true and accurate copies of Plaintiff's Federal Trademark Registration Certificates for ROOTER MAN and A ROOTER MAN.* The marks were specifically registered for cleaning and repairing septic systems and clearing clogged pipes and drains, in class 37 (U.S. CL. 103).

6. Plaintiff has actively taken steps to protect its rights in the *ROOTER MAN* and *A ROOTER MAN* names and marks. Whenever Plaintiff noticed any unlicensed use of *ROOTER MAN* and/or *A ROOTER MAN* name/marks in the marketplace, Plaintiff actively notify the possible infringers by sending out cease and desist letters and, on multiple occasions, the infringers who received Plaintiff's cease and desist notifications agreed to cease their unauthorized use of the name/marks. Additionally, the *ROOTER MAN* and *A ROOTER MAN* marks have obtained uncontestable status in 1997. *Attached hereto as Exhibit 2 are true and accurate copies of the notices from the USPTO.* Furthermore, Plaintiff actively monitor any potential trademark registration conflict at USPTO through a Pending Application Watch program provided by THOMSON & THOMSON.

7. Upon information and belief, Defendant A Best was formed in or about 1977 to provide plumbing, sewer, and drain cleaning services.

8. With actual and/or constructive notice of Plaintiff's federal registration of the *ROOTER MAN* and *A ROOTER MAN* marks, Defendants registered a service mark *ROOTER MAN* with the Louisiana Secretary of State on or about April 13, 1996, which was about five (5) years after Plaintiff's federal registration.

9. Upon information and belief, Defendants used *ROOTER MAN* mark in connection with their plumbing, sewer, and drain cleaning services within a certain limited geographic area in the State of Louisiana only.

10. To promote its business and protect its rights in *ROOTER MAN* and *A ROOTER MAN* name/marks, Plaintiff used *ROOTER MAN* name to register a domain name of *rooterman.com* with "whoisdotster.com" on or about August 1, 1997. Similarly, Plaintiff used *A ROOTER MAN* name to register a domain name of *arooterman.com* with "whoisdotster.com" on or about July 17, 2000. Plaintiff actively used and continues to use the above websites to promote its ROOTER MAN franchise sales and related services since the registration.

11. In February 2001, at an International Pumper and Cleaner Environmental Expo("2001 Trade Show") held in Nashville, Tennessee where Plaintiff was an exhibitor as the franchisor of the ROOTER MAN franchise, Defendant Lavenia went to the show presenting himself as "ROOTER MAN" using the *ROOTER MAN* name on his outfit and business cards. Additionally, Defendant Lavenia was witnessed walking around, talking to other people at the show and, upon information and belief, challenging Plaintiff's rights to the *ROOTER MAN* and/or *A ROOTER MAN* name/marks.

4

12. Mr. Donald MacDonald, the President and CEO of Plaintiff A Corp, was surprised when he was introduced to Defendant Lavenia who appeared as a "ROOTER MAN" at the 2001 Trade Show.

13. As a result of Defendants' conduct at the 2001 Trade Show, Plaintiff lost several prospective franchisees who showed great interests in joining the ROOTER MAN franchise organization right before the trade show and were seen talking with Defendant Lavenia at the trade show. *See Donald MacDonald's Affidavit submitted herewith*.

14. On or about October 22, 2001, about eight (8) months after the Defendants' infringing conduct at the 2001 Trade Show, Defendants used the term of *ROOTER MAN* and/or *A ROOTER MAN* to register a domain name of *abestrooterman.com* with "whoisopensrs.net." Defendant Lavenia was listed as the administrative contact for the registration.

15. Defendants advertised for sewer, drain cleaning services, and solicited for customers using the *ROOTER MAN* name and/or mark on the website of *abestrooterman.com*, which is accessible in Massachusetts and is interactive.

16. On their online advertisement and other marketing materials, Defendants fraudulently use the federal trademark registration symbol -®- with the *ROOTER MAN* mark indicating federal registration when they clearly knew about Plaintiff's federal registration of the mark. *Attached hereto as Exhibit 3 are some of the printouts from Defendants' website*.

17. Defendants' intentionally infringing use of Plaintiff's *ROOTER MAN* and/or *A ROOTER MAN* marks in the domain name of *abestrooterman.com* and website advertisement has caused confusion in the marketplace, including Massachusetts, as to the business relationship between the parties. *Attached hereto as Exhibit 4 are true and accurate copies of email from some of Plaintiff's franchisees and Plaintiff's phone call note showing the confusion*.

18. Since 2000, Plaintiff has received, on multiple occasions, complaints from Defendant(s)'s customers complaining about the poor services provided by Defendant(s), which severely injured Plaintiff's outstanding reputation in the field. *Attached hereto as Exhibit 5 are true and accurate copies of emails from Defendant(s)'s customers.*

19. Defendants' infringing use of Plaintiff's *ROOTER MAN* and *A ROOTER MAN* name/marks in their domain name *abestrooterman.com* and website advertisement caused dilution of the distinctive quality of the Plaintiff's federal marks.

20. Upon information and belief, Defendants chose to use the *ROOTER MAN* and/or *A ROOTER MAN* marks nationwide, after they learned of Plaintiff's rights to the marks, in order to trade off the goodwill associated with Plaintiff's *ROOTER MAN* and *A ROOTER MAN* marks. Given the level of recognition of Plaintiff's marks in plumbing, sewer, and drain cleaning markets and Defendants' infringing conduct at the 2001 Trade Show, it is virtually impossible that Defendants could have used Plaintiff's names/marks nationwide without knowing of the infringement.

21. Plaintiff has made various attempts to have Defendants cease and desist from their infringing use of Plaintiff's marks. *Attached as Exhibit 6 are copies of Plaintiff attorney's letters to Defendants seeking to have them cease and desist their infringing conduct.* Defendant A Best, however, filed a civil action against Plaintiff in the 24th Judicial District Court, Parish of Jefferson in Louisiana, in December 2004, claiming trademark rights to the Rooter Man mark based on an alleged earlier use in Louisiana and seeking a permanent injunction, enjoining Plaintiff, its officers, agents, servants, employees and attorneys, from any use, advertisement, promotion, sale, and/or distribution of the *ROOTER MAN* mark or anything

substantially similar to it. Defendant A Best did not mention in its pleadings, however, that Plaintiff owned federal trademark registrations.

22. Plaintiff has made efforts to resolve Defendant A Best's action without litigation. Defendant A Best, however, declined Plaintiff's attempt to settle. *Attached as Exhibit 7 is true and accurate copy of a letter from Plaintiff's attorney to the attorney of Defendant A Best.*

23. Issues in connection with Plaintiff's federal registrations of *ROOTER MAN* and *A ROOTER MAN* marks were not raised in the Louisiana State action.

24. Plaintiff filed the Complaint in the present case against Defendants for federal trademark infringement with this Court on or about August 10, 2005.

25. Both Defendants reside in the State of Louisiana.

26. Defendants were served on or about December 5, 2005, and the service was within the 120 days period allowed by Fed.R.Civ.P. 4(m). *Attached hereto as Exhibit 8 are true and accurate copies of the summons and proof of service.*

27. Defendants had twenty (20) days from the service to file their response under Fed.R.Civ.P. 12(a) and said response was due on or about December 27, 2005.

28. Defendants did not file their answers or any other documents with the Court by December 27, 2005.

29. On or about January 9, 2006, Attorney Michael Carbo called Plaintiff's attorney and indicated that he represented the Defendants and requested an extension to answer Plaintiff's Complaint to the end of January. Plaintiff's attorney subsequently notified Attorney Carbo by phone that Plaintiff was agreeable to the extension as he requested.

30. Subsequent to the phone conversations on or about January 9, 2006, Attorney Carbo ceased to communicate with Plaintiff's attorney and did not answer or return Plaintiff's attorney's

phone calls.  *Attached hereto as Exhibit 9 is a true and accurate copy of a letter to Attorney Carbo dated February 16, 2006, mailing acknowledgement and returned receipt from Defendants.*

31. Plaintiff subsequently filed a Motion for Entry of Default against Defendants, which was allowed by the Court on or about March 28, 2006.  *Attached hereto as Exhibit 10 is a true and accurate copy of the electronic Court notice.*

32. While the current action is pending, Defendants continued to use the name/mark ROOTER MAN / A ROOTER MAN in its online advertisement and its website of "*abestrooterman.com*" continued to operate.  *Attached hereto as Exhibit 11 is some random printouts of the "abestrooterman.com" website.*

33. While the present action is pending, Plaintiff kept receiving emails evidencing actual confusion as to the relationship between Plaintiff and Defendants.  *See Exhibit 5.*

34. Plaintiff started to receive more emails and phone calls evidencing confusion from 2005 and Plaintiff suffered total sale loss in the amount of $79,109.00 (20% decrease from 2004).  *Attached hereto as Exhibit 12 is a summary of Plaintiff's audited financial statement regarding the total sales from 2004 to 2005.  See also Donald MacDonald's Affidavit submitted herewith.*

35. Plaintiff's expense for advertising for its franchise market promotion in 2005 was $41,266.00, which was $14,255.00 more than that in 2004.  *See Exhibit 12*.

36. It will cost Plaintiff at least $10,316.50, which is equal to 25% of the 2005 advertising expense ($41,266.00), to publish a corrective advertisement nationwide clarifying the fact that there is no business relationship between the Defendants and Plaintiff.  *See Donald MacDonald's Affidavit submitted herewith*.

# ARGUMENT

The facts relevant to the current action were established by Defendants' default. Consequently, the Court should find Defendants liable for each of the counts alleged in the Complaint. Additionally, with the Court's finding of willful infringement, Plaintiff is entitled to permanent injunctive relief, compensation for its actual damages, and costs of this action plus reasonable attorney's fees.

**A. Defendants' Liabilities were Established by Their Default**

It has been well settled in this jurisdiction that "a party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability." *See Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n. 3 (1st Cir. 1999). When default is entered against a defendant, each of the plaintiff's claims must be considered established as a matter of law. *See Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 13 (1st Cir. 1985).

In the present case, Plaintiff alleged, in its Complaint, that Defendants willfully infringed Plaintiff's federally registered trade name/marks and service marks of *ROOTER MAN* and *A ROOTER MAN* and fraudulently used the federal registration symbol -®- with its infringing use of the name/marks. Plaintiff further claimed that Defendants' infringing conduct constituted: (1) infringement of federal trademark /service mark in violation of section 32 of the Lanham Act, 15 U.S.C. §1114; (2) false designation of origin in violation of 15 U.S.C. §1125(a); (3) dilution in violation of 15 U.S.C. § 1125(c); (4) unfair business practice / unfair competition; (5) unjust enrichment; and (6) fraud.

Because Defendants failed to defend or file any documents with the Court, a default was entered against them. According to the precedent cases cited above, each factual allegation in

9

Plaintiff's Complaint must be found true and each count of the Complaint must be considered established as a matter of law. Therefore, a judgment on all counts in Plaintiff's Complaint should be entered in favor of Plaintiff and against Defendants.

### B. Plaintiff is Entitled to Permanent Injunctive Relief

Under *15 U.S.C. §§ 1114, 1116,* a registrant of a federal mark may obtain an injunction to prevent future infringement. Since the Defendants defaulted herein, Plaintiff is now seeking a permanent injunction rather than a preliminary injunction. This jurisdiction considers four factors in determining the issue of application of preliminary injunction: "1) the plaintiff's likelihood of success on the merits; 2) whether the plaintiff risks suffering irreparable harm if the injunction is not granted; 3) whether such injury outweighs that harm that injunctive relief would cause for the defendant; and 4) whether the public interest would be adversely affected by granting or denying an injunction." *See American Board of Psychiatry and Neurology, Inc. v. Johnson-Powell*, 129 F.3d 1 (1st Cir. 1997) citing *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir.1992).

### 1. Plaintiff's success of merits was established by Defendants' default.

When default is entered against a defendant, each of the plaintiff's claims must be considered established as a matter of law. *See Brockton Savings Bank,* 771 F.2d at 13. Pursuant to such ruling, Plaintiff's success on the merits of all counts was established by Defendants' default in the present case.

### 2. Plaintiff will suffer irreparable harm if the injunction is not granted.

The First Circuit has held that "by its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified, and, thus, the trademark owner cannot adequately be compensated."

*See American Board of Psychiatry and Neurology, Inc.*, 129 F.3d, at *4; *see also Camel Hair and Cashimere Institute of America, Inc. v. Associated Dry Goods Corporation*, 799 F.2d 6, 14-15 (1st Cir. 1986) and *Trak, Inc. v. Benner Ski, K.G.*, 475 F.Supp. 1076, 1078 (D.Mass. 1979) (If defendants are unlawfully infringing plaintiff's trademark, irreparable harm flows from the injury…").

In the present case, Defendants' willful infringement of Plaintiff's marks caused irreparable harm to Plaintiff's goodwill, reputation in the field and loss of potential sales. Given the fact that Defendants ignored current legal action and continued its infringing conduct while the current action is pending, Defendants' infringing conduct is likely to continue and will continue to cause irreparable harm to Plaintiff in the future if the Court does not grant the permanent injunctive relief.

### 3. The injury caused by Defendants outweighs the harm that injunctive relief would cause for Defendants.

Courts usually grant injunctive relief if the hardship to plaintiff by denying the injunctive relief outweighs the harm caused by the injunctive relief. *See Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495, 134 (2nd Cir. 1962); *see also Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 315 F. Supp. 45 (S.D.N.Y. 1970), aff'd 437 F.2d 566 (2nd Cir. 1971) (injunction granted).

In the present case, hardship to Plaintiff if the Court does not grant an injunctive relief will be substantial. Plaintiff has the exclusive rights to its federally registered marks that are incontestable. Such rights are violated by Defendants' willfully infringing use of the marks. Defendants' infringing use of the marks is likely and has actually caused confusion to the public as to the business relationship between the parties. Given the fact of Defendants' default and

that Defendants refused to cease and desist from their infringing conduct in spite of Plaintiff's multiple notifications of infringement and fraud, Plaintiff will continue to suffer irreparable harm in the future if the injunctive relief is not granted.  Although Defendants, if the permanent injunctive relief is granted, will have to stop their internet advertisement using the name ROOTER MAN and cancel the domain name of www.abestrooterman.com , Defendants have no rights to engage in such infringement and cannot claim harm if enjoined from violation of Plaintiff's rights.

    **4.  Injunctive relief will not adversely affect the public interest.**

"The injury in an infringement case is two-fold: to the trademark owner through loss of good will and presumably profits and to the public because of confusion caused by the similar marks."  See *Keds Corp. v. Renee International Trading Corp.*, 888 F.2d 215 at 218 (1st Cir. 1989) (citing *Buckeye Associates v. Fila Sports, Inc.*, 616 F. Supp. 1484 (D.Mass. 1985)).

In the present case, Defendants' infringing conduct has caused confusion to the public as to the business relationship between the Defendants and Plaintiff  and is likely to cause confusion in the future.  Given the fact that Defendants willfully infringed Plaintiff's marks and refused to discontinue the infringement, an injunctive relief will prevent Defendants from continuously infringing Plaintiff's marks and causing confusion to the public in the future.

**C. Plaintiff is Entitled to Monetary Damages**

Under 15 U.S.C. § 1117(a), Plaintiff shall be entitled to any damages sustained by Plaintiff as a result of Defendant's infringement.  In addition to a plaintiff's loss of earnings, courts may award the prevailing plaintiff costs that the plaintiff would need to engage in corrective advertisement.  See, e.g., *Thomas Nelson, Inc. v. Cherish Books, Ltd.*, 595 F. Supp. 989 (S.D.N.Y. 1984); and *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp.

1219 (D. Colo. 1976) (awarded 25% of plaintiff's past advertising budget), modified 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052 (1978).

In the present case, Plaintiff suffered from loss of sales as a direct result of Defendants' willful infringing conduct at the 2001 Trade Show. At the time of said infringement, the initial franchise fee to purchase a ROOTER MAN franchise was $3,975.00 per unit. Defendants' infringing conduct at the 2001 Trade Show caused Plaintiff's loss of several franchise sales, in value of at least $7,950.00.

In addition, Defendants' willful infringement through internet caused actual confusion among the public as to the business relationship between the Defendants and Plaintiff. Plaintiff received complaints about the inferior services provided by Defendants, believing that they were performed by Plaintiff's franchise. Plaintiff has spent a lot of time and efforts to clarify, in each complaint, that Defendants are not one of the ROOTER MAN franchises and that Defendants are not affiliated with Plaintiff. As such, Defendants' willful infringement of Plaintiff's federal trademarks caused irreparable injury to Plaintiff's outstanding reputation in the field. The damages from the confusion became more apparent since 2005 when Plaintiff received many more emails and phone calls evidencing the confusion. Plaintiff believes that, as a result of the confusion to the public, Plaintiff suffered from loss of sales of the ROOTER MAN franchises in the amount of approximately $79,109.00 (20% decrease from 2004).

Furthermore, to clarify the confusion to the public and save its reputation in the field, it will cost Plaintiff at least $10,316.50, which is equal to 25% of the 2005 advertising expense ($41,266.00), to publish a corrective advertisement nationwide clarifying the fact that there is no business relationship between the Defendants and Plaintiff.

Therefore, Plaintiff respectfully requests that the Court award it damages in the amount of $97,375.50 as described above plus interest.

### D.  Plaintiff is Entitled to Multiple Damages

Pursuant to 15 U.S.C. § 1117(a)(3), courts may award actual damages in an amount "not exceeding three times" the actual damages.  Courts are more willing to award multiple actual damages when the defendant is found liable for intentional infringement.  *See New York Racing Ass'n v. Stroup News Agency Corp.*, 920 F. Supp. 295, 301 (N.D.N.Y. 1996) (profits of about $5,000, and a reasonable royalty amount of about $750 were trebled because of intentional infringement); *see also Larsen v. Terk Technologies Corp.*, 151 F.3d 140 (4th Cir. 1998) (court trebled to almost $218,000 the profits of an intentional infringer).

In the present case, it is not disputed that Defendants knowingly and willfully infringed Plaintiff's federal marks and have continued such infringement in spite of repeated cease and desist demands by Plaintiff.  Accordingly, the Court should award Plaintiff treble damages.

### E.  Plaintiff is Entitled to Costs of the Action and Reasonable Attorney Fees

Under 15 U.S.C. § 1117(a), Plaintiff shall be entitled to recover the costs of the present action.  Further, 15 U.S.C. § 1117(a) provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party."  This jurisdiction has defined exceptional cases as cases in which the acts of trademark infringement were malicious, fraudulent, deliberate, **or willful,** and bad faith or fraud is **not** a necessary precondition to an award of attorney's fees in trademark infringement actions.  *See Tamko Roofing Products v. Ideal Roofing*, 282 F.3d 23, 31-32 (1st Cir.2002).  In addition, a case may be considered exceptional where the defendants disregard the proceedings and do not appear.  *See Nationwide Mutual Insurance Co. v. Hoyle Insurance, Inc*. 1994 WL 175024, *1 (D.Mass. 1994) (award of attorney fees is justified by

defendant's failure to respond to plaintiff's complaints and their overtures of settlement as well as to the pleadings); *see also Woman to Woman Inc. v. Woman to Woman Co.*, 2003 WL 1741110, at *4 (D.Me. 2003) (award of reasonable attorney fees to the plaintiff appropriate when the defendant refused to desist from its infringing practices and knowingly ignored the legal process).

In the present case, similar to the precedent cases cited above, Defendants admitted, by default and the Court should find same, that they willfully infringed Plaintiff's exclusive rights to its federally registered trademarks / service marks and refused to cease and desist from future infringement. Additionally, Defendants knowingly disregarded the current legal process. Plaintiff duly served on Defendants the summons and the Complaint and exercised due diligence to keep Defendants informed as to the progress of this litigation. Defendants, however, chose to ignore the lawful order of the Court and failed to file their answers to Plaintiff's Complaint or any documents with the Court. Accordingly, award of reasonable attorney's fees in the amount of $27,845.00 is appropriate in the present case. Plaintiff's request for attorney's fees and costs in connection with this action is further supported by attached attorney affidavits of Juan Liu, Esquire and William H. McCarter Jr., Esquire.

## CONCLUSION

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that the Court grant its Application for Judgment by Default Pursuant to Rule 55(b)(2).

Respectfully Submitted<br>
A Corp d/b/a ROOTER-MAN<br>
By its attorney

/s/ Juan Liu_____
Juan (Jenny) Liu, BBO# 655921
William H. McCarter, Jr. BBO# 327620
P.O. Box 290
N. Billerica, MA 01862
Tel: (978) 667-1144
Fax: (978) 663-0061

Date: May 23, 2006

## CERTIFICATE OF SERVICE

      I certify that a true copy of the above document was served by mail to both Defendants, A Best Sewer & Drain Service, Inc at 2545 Delaware Ave., Kenner LA 70062, Guy Joseph Lavenia Sr. at 2231 Roosevelt Blvd., Kenner LA 70062, and Attorney Michael Carbo, at A Professional law Corporation, 700 Whitney Bank Building, 228 St. Charles Avenue, New Orleans, LA 70130 by first class mail on the date set forth below.

Date:  May 24, 2006              /s/ Juan Liu_____
                                                       Juan Liu