UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHSUETTS

_____
A CORP. d/b/a ROOTER MAN,                )
    Plaintiff,                                             )
                                                                 )
v.                                                             )
                                                                 )   CIVIL ACTION NO.
A BEST SEWER & DRAIN SERVICE, INC., and  )   05-11655 NMG
GUY JOSEPH LAVENIA SR.,               )
    Defendants.                                         )
_____)

**AFFIDAVIT OF VERONICA LAVENIA**

Veronica LaVenia hereby deposes and states as follows:

1. My name is Veronica LaVenia. I am the day-to-day manager of Best Sewer & Drain Service, Inc. ("Best Sewer"), which sometimes does business as "A Best Sewer & Drain Service," located in Kenner, Louisiana. Best Sewer is a Louisiana corporation. Guy LaVenia Sr. is my father. My mother and father are the owners of Best Sewer.

2. Since 1977, Best Sewer has been continuously using the service mark "ROOTER MAN" for its plumbing and sewer and drain cleaning services. Best Sewer registered that service mark in Louisiana in 1996, affirming its date of first use in June of 1977. Previously, in 1990, Best Sewer had registered in Louisiana the trade name "Rooter Man" with the tag line "When Your Drains Don't Work - We Do!", affirming a date of first use in 1983.

3. Best Sewer is a local plumbing service and repair company servicing the greater New Orleans area. Best Sewer's website and other advertisements specifically target customers in the greater New Orleans area. We do not do any work in Massachusetts. We are not a franchisor and there are no businesses in Massachusetts that are in any way affiliated with Best Sewer. We have no contracts or other dealings in Massachusetts at all.

4. Best Sewer filed a lawsuit against A Corp. in Louisiana state court in December 2004 seeking to enforce our right to use the Rooter Man trade name in Louisiana. Our attorney for this litigation was Michael Carbo.

5. Hurricane Katrina devastated much of Louisiana in late August 2005. Most businesses in Orleans and Jefferson Parishes (including our own) were shut down for many months thereafter. To this date, there is still no phone service to all of Orleans Parish. I found out later that Mr. Carbo's office, located in New Orleans, had become nonfunctional as a result of the hurricane and that he had relocated temporarily to Tennessee. From that point onwards, it became extremely difficult to contact him.

6. We received the plaintiff's Summons and Complaint for this litigation on December 5, 2005. I immediately had an employee hand deliver a copy of the Complaint to Mr. Carbo's house. When Mr. Carbo learned about the lawsuit, he told me that he was going to ask for an extension of time to respond to the Complaint. He assured me that he was on the case and that he would respond to the Complaint.

7. We were not able to get in touch with Mr. Carbo until February of 2006. After delivering the Complaint to his house in December 2005, I attempted to contact him periodically to get an update on the case but he did not answer his phone or respond to the messages I left. Ultimately, I found Mr. Carbo's email address on the Louisiana state bar website. I then contacted him via email.

8. Mr. Carbo called me back on February 24, 2006 and told me that everything was "on track" and that he had not had heard from anyone. He said if I heard from anyone to let him know.

9. In late March, I received a copy of the entry of default. I was confused by its contents as I thought the case was in Louisiana court (per the previous litigation), and had no idea that it was still in Massachusetts.

10. I was able to reach Mr. Carbo via his cell phone in late March and he informed me that he was in New Orleans that day. He came to our office and picked up a copy of the entry of default and its attached documents. In a follow-up call with him that day, Mr. Carbo said he would review the pleadings and respond appropriately. He again assured me that he was on the case.

11. I did not hear back from Mr. Carbo for a long time after that. We did think of changing attorneys at this time, but it was a very hectic time for our business and for businesses throughout Louisiana due to the destruction of the hurricane. Telephone and electricity coverage in the New Orleans area was sporadic at best, making finding another attorney extremely difficult. Thus, at the time it seemed like a better decision to stick with the attorney we already had, especially since he always assured us that he was on the case.

12. I called Mr. Carbo on a weekly to monthly basis from April until October. I left multiple messages for him on his home and cell phone numbers, spoke and left messages with his wife, and even left messages with his mother-in-law who was living with him at the time. Unfortunately, I was not able to reach him until October of this year.

13. On October 6, 2006, we received a copy of the plaintiff's motion for default judgment. I immediately left a message on Mr. Carbo's cell and home phone numbers stating that we had received another package from a Massachusetts court and that I didn't know how to proceed or even what it meant.

14.     Later on that same day, I managed to finally reach Mr. Carbo via his cell phone. I told him about the motion for default judgment I had recently received. He stated that he "dropped the ball" and had neglected to file a response to the complaint, or respond to the entry of default. He also said that he was having great difficulty actively practicing law.

15.     Best Sewer has always wanted to fight for its rights to use the Rooter Man trademark and trade name, which it registered and has used for a long time. In fact, we filed the 2004 litigation in Louisiana state court in order to do this.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 18th DAY OF OCTOBER, 2006

*/s/ Veronica LaVenia*
Veronica Lavenia