UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
A CORP. d/b/a ROOTER MAN                         )
                                        Plaintiff        )
                                                         )
v.                                                       )
                                                         )      CIVIL ACTION NO.
A BEST SEWER & DRAIN SERVICE, INC., and  )      05 CA 11655 NMG
GUY JOSEPH LAVENIA SR.                           )
                                        Defendants    )
_____ )

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO VACATE ENTRY OF DEFAULT AND MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION**

NOW comes Plaintiff A Corp d/b/a Rooter Man ("Plaintiff") and respectfully opposes

Defendants' Motion to Vacate Entry of Default and Motion to Dismiss for Lack of Personal

Jurisdiction.   As grounds, Plaintiff states that the Motion to Dismiss for Lack of Personal

Jurisdiction was untimely filed without the Court's order or parties' stipulation.  The defense of

personal jurisdiction was waived by Defendants' late filing.  Even if the late filing of the Motion

to Dismiss for Lack of Personal Jurisdiction is subsequently allowed by the Court, this Court has

proper personal jurisdiction over both Defendants.   Additionally, Defendants' Motion to Vacate

Entry of Default was untimely filed and they failed to show good cause under Fed. R. Civ. P.

55(c), on the basis of which the Court may vacate the entry of default.

**STATEMENT OF FACTS**

1.  Plaintiff is the owner of federally registered trademark/service marks of *ROOTER MAN*

    (Reg. No. 1,655,782) and *A ROOTER MAN* (Reg. No. 1,654,512), which were registered

    with the United States Patent and Trademark Office ("USPTO") on or about August 20, 1991

for *A ROOTER MAN* and on or about September 3, 1991 for *ROOTER MAN* .   Both marks

obtained **uncontestable status** in 1997.   *See Affidavit of Donald MacDonald, ¶ 6-7.*

2.   Through its active use of the *ROOTER MAN* and *A ROOTER MAN* names and marks through

the United States and worldwide, the *ROOTER MAN* and *A ROOTER MAN* name/marks have

become distinctively identified in the trade with Plaintiff and, in particular, with its growing

reputation for providing successful franchises for plumbing, sewer, and drain cleaning

services.   To date, Plaintiff has been named, for the fourth (4th) consecutive year, number one

franchise in the category of plumbing by Entrepreneur Magazine and has been ranked

number nine (9) out of the top thirty (30) New England franchises.   By December 31, 2005,

there were 106 ROOTER MAN franchises operating 294 units in thirty seven (37) states in

the U.S. and Canada.

3.   Upon information and belief, Defendant A Best Sewer & Drain Service, Inc. ("A Best") was

formed in or about 1977 to provide plumbing, sewer, and drain cleaning services.

4.   With actual and/or constructive notice of Plaintiff's federal registration of the *ROOTER MAN*

and *A ROOTER MAN* marks, Defendants registered a service mark *ROOTER MAN* with the

Louisiana Secretary of State on or about April 13, 1996, which was about five (5) years after

Plaintiff's federal registration.

5.   Defendants allegedly used the *ROOTER MAN* mark in connection with their plumbing and

repair services within the greater New Orleans area in the State of Louisiana only.

6.   To promote its business and protect its rights in *ROOTER MAN* and *A ROOTER MAN*

name/marks, Plaintiff used the *ROOTER MAN* name to register a domain name of

*rooterman.com* with "whoisdotster.com" on or about August 1, 1997.  Similarly, Plaintiff

used the *A ROOTER MAN* name to register a domain name of *arooterman.com* with

"whoisdotster.com" on or about July 17, 2000.  Plaintiff actively used and continues to use the above websites to promote its ROOTER MAN franchise sales and related services nationwide since the registration.

7.  On or about October 22, 2001, more than ten (10) years after Plaintiff's federal registration and more than one (1) year after Plaintiff's registration and use of domain names of "rooterman.com" and "arooterman.com", Defendants used the term of *ROOTER MAN* and/or *A ROOTER MAN* to register a domain name of *abestrooterman.com* with "whoisopensrs.net."  Defendant Lavenia was listed as the administrative contact for the registration.

8.  Defendants advertised for plumbing, sewer, drain cleaning services, and solicited for customers using the *ROOTER MAN* name and/or mark on the website of *abestrooterman.com*, which is accessible in Massachusetts and is interactive so that a prospective customer may contact Defendants through their website.  *See* http://realpagessites.com/abestrooterman/contactus/ (*(January 26, 2005, October 19, 2006), a print out of each is attached hereto as Exhibit 1.*

9.  The web content includes statements that "if your area does not appear above [listed Greater New Orleans area and surroundings], please do not hesitate to contact us to inquire…" *See* http://abestrooterman.com/page5.html *(January 26, 2005, October 19, 2006), a print out of each is attached hereto as Exhibit 2.*

10. Defendants' intentionally infringing use of Plaintiff's *ROOTER MAN* and/or *A ROOTER MAN* marks in the domain name of *abestrooterman.com* and website advertisement has caused confusion in the marketplace, including Massachusetts, as to the business relationship between the parties.  *See Affidavit of Donald MacDonald, ¶11.*

11. Defendants' infringing use of Plaintiff's *ROOTER MAN* and *A ROOTER MAN* name/marks in their domain name *abestrooterman.com* and website advertisement has caused dilution of the distinctive quality of the Plaintiff's federal marks.

12. Plaintiff has made various attempts to have Defendants cease and desist from their infringing use of Plaintiff's marks.  Defendant A Best, however, filed a civil action against Plaintiff in the 24th Judicial District Court, Parish of Jefferson in Louisiana, in December 2004, claiming limited area defense based on an alleged earlier use in Louisiana and seeking a permanent injunction, enjoining Plaintiff, its officers, agents, servants, employees and attorneys, from any use, advertisement, promotion, sale, and/or distribution of the *ROOTER MAN* mark or anything substantially similar to it without any geographic limitation.

13. Plaintiff has made efforts to resolve Defendant A Best's action without litigation.  Defendant A Best, however, declined Plaintiff's attempt to settle.

14. With regard to the present action, it should be noted that no issue in connection with Plaintiff's federal registrations of *ROOTER MAN* and *A ROOTER MAN* marks was raised in the Louisiana State action and that the State action arises out of totally different set of fact than are present in this action.  The current action seeks to enjoin Defendants from infringing use of Plaintiff's uncontestable federal trademarks in their domain name and website, which have been continuously distributed nationwide and have caused actual confusion as to the business relationship between the parties.

15. Knowing that the current action is pending, Defendants have continued to use the name/mark *ROOTER MAN / A ROOTER MAN* in their online advertisement and their website of "*abestrooterman.com*", which continues to operate. Plaintiff has received many emails

evidencing genuine confusion as to the relationship between Plaintiff and Defendants. *See Affidavit of Donald MacDonald, ¶ 12.*

16. After the Complaint in this case was filed on or about August 10, 2005, the summons and copies of the Complaints were duly served on both Defendants on or about December 5, 2005. Copies of the summons and return receipts were previously submitted to the Court with an Attorney's Affidavit in connection with Plaintiff's Motion for Entry of Default.

17. Defendants had twenty (20) days from the service of the summons and Complaint to file their response under Fed. R. Civ. P. 12(a), which was due on or about December 27, 2005.

18. Defendants did not file their answers or any other response with the Court by December 27, 2005.

19. On or about January 9, 2006, Attorney Michael Carbo called Plaintiff's attorney, indicating that he represented the Defendants, and requested an extension of time to answer Plaintiff's Complaint to the end of January. Plaintiff's attorney subsequently notified Attorney Carbo by telephone that Plaintiff was agreeable to the extension as requested until January 31, 2006, when Defendants' response then became due as ordered by the Court.

20. After the phone conversations on or about January 9, 2006, Attorney Carbo ceased to communicate with Plaintiff's attorney and did not answer or return repeated telephone messages from Plaintiff's attorney.

21. Fully aware of the deadline for responsive pleading, the Defendants did not file their answer or any other responsive pleading by January 31, 2006. No motion to dismiss for lack of personal jurisdiction was served or filed by Defendants by January 31, 2006. *See Affidavits of Veronica Lavenia and Attorney Carbo filed in support of Defendants' Motions.*

22. Defendants' counsel admitted that he "neglected to calendar the agreed upon date for responding to the Complaint and it went by." *See Affidavit of Attorney Carbo, ¶6.*

23. On or about March 14, 2006, forty two (42) days after the extended deadline for answer, Plaintiff filed a Motion for Entry of Default against Defendants, which was duly served on both Defendants and Attorney Carbo.

24. After Defendants failed to respond to Plaintiff's Motion for Entry of Default, the default was entered by the Court on or about March 28, 2006.

25. As Defendants admitted in their supporting affidavits, they timely received the Court's order for entry of default in late March, 2006, and gave a copy to Attorney Carbo, but none of them took any action to correct the default. *See Affidavit of Veronica Lavenia, ¶9.*

26. According to some public records, after the Katrina storm in August 2005, Defendants' business was not severely affected by the storm, and Defendants re-established their business by spring of 2006. Subsequent to Katrina, Defendants generated a considerable amount of work because of the tremendous needs for clean up after the storm. *See article in CLEANER, July 2006 at 104 attached hereto as Exhibit 3.*

27. When Defendants found that it was difficult for them to reach Attorney Carbo by the end of March 2006, they considered changing attorneys, but they did not do so. *See Affidavit of Veronica Lavenia, ¶11.*

28. Knowing of the entry of default, Defendants took no timely action to contact the Court, change their counsel, or correct the default themselves, even though they admittedly had not been able to reach Attorney Carbo, by making weekly phone calls, for approximately six (6) months from April to October 2006. *See Affidavit of Veronica Lavenia, ¶12.*

29. On or about May 24, 2006, Plaintiff filed a Motion for Default Judgment, which was duly served on both Defendants.

30. Defendants failed to respond to the Motion for Default Judgment within the time period allowed by Fed. R. Civ. P. 6 and Local Rule 7.1(b)(2) of this Court, which was fourteen (14) days after service of such Motion, or June 10, 2006.

31. On or about October 6, 2006, Plaintiff submitted to the Court, as the Court requested, a draft of a Default Judgment including the amount of damages and the injunctive relief that Plaintiff sought.  As a professional courtesy, Plaintiff served a copy of said drafts on both Defendants and Attorney Carbo.

32. More than six (6) months after the entry of Default and more than four (4) months after Plaintiff filed the Motion for Default Judgment, but within two (2) weeks after Plaintiff served them a copy of the draft of the Default Judgment specifying the dollar amount sought and injunctive relief requested, Defendants retained a Boston law firm and moved to vacate the default and to dismiss the Complaint due to lack of personal jurisdiction.

33. To date, there has been no dispute as to the sufficiency of any service of process.

## ARGUMENT

Defendants waived any defense for lack of personal jurisdiction when they failed to raise the defense within the time period allowed by Fed. R. Civ. P. 12(a) & (b) and therefore waived the defense under Fed. R. Civ. P. 12(h).  Additionally, Defendants raised the defense of lack of personal jurisdiction six (6) months after the Default was entered against them.  Even if the Court considers Defendants' late challenge to personal jurisdiction without any request for enlargement of time to respond, this Court has proper personal jurisdiction over Defendants under the Massachusetts long-arm statute, and the exercise of personal jurisdiction comports

with Constitutional Due Process.  Additionally, Default was appropriately entered, and

Defendants failed to present any "good cause" under Fed. R. Civ. P. 55(c) based on which the

Court might vacate the entry of default.

**A.  The Appropriate Basis for Personal Jurisdiction Exists.**

Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is barred by Fed. R.

Civ. P. 12(a), (b)& (h) and was filed more than six (6) months after the Default was entered.

Even if the Court accepts Defendants' late filing of the Motion to Dismiss, this Court properly

has personal jurisdiction over Defendants under the Massachusetts long-arm statute, and the

exercise of personal jurisdiction comports with Constitutional Due Process.

**a.  Defendants' defense of lack of personal jurisdiction is untimely under Fed. R. Civ. P. 12(a)&(b) and therefore waived under Rule 12(h).**

Defense of lack of jurisdiction over the person must be raised in a motion afforded by

Fed. R. Civ. P 12(b)(2), and such a motion "shall be made before pleading if a further pleading is

permitted."  Fed. R. Civ. P 12(h) states "a defense of lack of jurisdiction over the person…is

waived…(B) if it is neither made by motion under this rule nor included in a responsive

pleading…"  The time limitation on Rule 12(b) motions is that they "must be made before

pleading.  Rule 12(a), which allows twenty (20) days for filing responsive pleadings, normally

controls the time limit on these motions."  *See 5C. Wright & Miller, Federal Practice and

Procedure: Civil 3d §1361 at 96-98.*  Courts in this jurisdiction usually consider that a defendant

agrees to personal jurisdiction by another federal district when the motion to dismiss for lack of

jurisdiction over the person is not filed until after the time for answering has expired.  *See

Gerakaris v. Champagne,* 913 F.Supp. 646, 650 (D. Mass. 1996) and *Litchfield Financial Corp.,

v. Buyers Source Real Estate Group,* 389 F.Supp.2d 80 (D. Mass. 2005) (both citing Wright &

Miller *§1361* and holding a Rule 12(b) motion must be filed before answer); *see also U.S. ex rel.*

*Masucci v. Follette*, 272 F.Supp. 563, 565 (D.C. N.Y. 1967) (motion to dismiss for want of personal jurisdiction filed after the time for answering had expired cannot be granted in the absence of an enlargement of the time).

In the present case, the Complaint was filed on August 10, 2005 and was subsequently served on both Defendants on or about December 5, 2005. Answer or other response to the Complaint was due by December 27, 2005. Due to the Katrina storm and as a professional courtesy, Plaintiff did not seek a default immediately after the deadline for response had past. When Defendants requested an extension to answer on or about January 9, 2006, Plaintiff agreed to the extension to January 31, 2006. As such, under Fed. R. Civ. P. 12(a) & (b), Defendants must file their Motion to Dismiss for Lack of Personal Jurisdiction by January 31, 2006.

Defendants, however, failed to file their answer or Motion to Dismiss for Lack of Personal Jurisdiction by January 31, 2006. The Motion to Dismiss for Lack of Personal Jurisdiction was filed more than eight (8) months after the time for responding to the Complaint had expired. Additionally, the Motion was filed without prior conferring with Plaintiff pursuant to Rule 7.1(a)(2), without stipulation of the parities or Court's permission for the late filing. Therefore, Defendants' defense of lack of personal jurisdiction was waived and their Motion to Dismiss for Lack of Personal Jurisdiction must be denied based on the above-cited precedents.

**b.  Defense of lack of personal jurisdiction was waived by Defendants' default.**

"As a general rule, federal courts will consider a Rule 12(b) motion by a party in default as untimely and therefore as having been waived." *See 5C.  Wright & Miller, Federal Practice and Procedure: Civil 3d §1391, at 517-518*. When a defendant was in default for failing to timely serve an answer, the defense of lack of jurisdiction over the person raised after the time for answering has expired is waived. *See U.S. ex rel. Masucci v. Follette*, 272 F.Supp. 563 at

564; *see also Zwerling v. New York & Cuba Mail S.S. Co.*, 33 F.Supp.721, 721 (D.C.N.Y. 1940) (the defendant having defaulted has waived all defenses or objections to the complaint); *Clover Leaf Freight Lines, Inc. v. Pacific Coast Wholesalers Ass'n*, 166 F.2d 626, 632 (7th Cir. 1948) (default was sufficient to bar defendant's later assertion of defense under Rule 12(b)). Even if the Court has the authority to grant Defendant's request to dismiss for want of personal jurisdiction, "it would be an abuse of discretion to do so after defense had been waived by defendant." *See Oliver Engebretson, Inc. v. Aruba Palm Beach Hotel & Casino*, 575 F.Supp. 1262, 1264, citing *Wright & Miller* (D.C. N.Y. 1984).

In the instant case, Plaintiff served all the pleadings and motions it filed with the Court on both Defendants as well as their counsel. Defendants did not challenge the sufficiency of the service process, and this action is not a surprise to Defendants. Defendants and their counsel are well aware of the legal process in this Court as evidenced in their affidavits, but none of them took any action to respond or otherwise defend, even after Plaintiff agreed to an extension as Defendants requested. Defendants' conduct in this litigation is obviously contradictory to their allegation that they always intended to fight in this matter.

Without a showing of "good cause" required under Fed. R. Civ. P. 55(c), which will be discussed in further detail in this memorandum (*infra, 14-17*), default should not be removed and Defendants' later assertion of defense for lack of personal jurisdiction was therefore waived.

### c. The Court appropriately has personal jurisdiction over Defendants

Even if this Court considers Defendants' late assertion of the defense of lack of personal jurisdiction, this Court does have specific personal jurisdiction under the Massachusetts long-arm statute, and the exercise of the personal jurisdiction comports with Constitutional Due Process.

### 1. Massachusetts long-arm statute

The Massachusetts long-arm statue provides that a non-resident may be subject to the jurisdiction of the Massachusetts courts if he caused tortious injury in the Commonwealth by an act or omission in the Commonwealth; *see M. G. L. ch. 223A § 3(c);* or by an act or omission outside the Commonwealth if he regularly does or solicits business or engages in any persistent course of conduct…, in this Commonwealth. *See M. G. L. ch. 223A § 3(d).* Trademark infringement is a tort which involves misrepresentation. *See Keds Corp. v. Renee International Trading Corp.,* 888 F.2d 215, 218 (1st Cir. 1989). In trademark infringement cases, the injury is said to have occurred where the trademark owner is located. *See Id.* at 232; *see also Hasbro, Inc. v. Clue Computing, Inc.*, 994 F.Supp.34, 39 (D.Mass. 1997). Maintaining an interactive website that is continuously available to Massachusetts residents is sufficient to establish regular solicitation of business in Massachusetts. *See Keds. Corp.*, 888 F.2d at 232; *see also Digital Equip. Corp. v. AltaVista Tech., Inc.*, 960 F.Supp. 456, 466-67 (D.Mass. 1997).

In the present case, Defendants caused tortious injury in this Commonwealth because Plaintiff, the owner of federal trademarks of *ROOTER MAN* and *A ROOTER MAN* which had obtained uncontestable status, is a Massachusetts residence. Additionally, Defendants imbedded the terms "rooterman" and/or "arooterman" to register a domain name so called "abestrooterman.com" after they had actual knowledge of Plaintiff's federal registration and subsequent to Plaintiff's registration of "rooterman.com" and "arooterman.com." Defendants' website usually appears immediately following Plaintiff's website in lists generated by entering the terms "rooter man" in a major search engine, such as "Google."

Unlike Defendants' allegation that their website targets only locally, the infringing website uses the *ROOTER MAN* mark to soliciting business nationwide by stating that "if your

area does not appear above (listed Greater New Orleans and Surrounding areas), please do not

hesitate to contact us to inquire…"  The website conveniently provides a contact link that a

prospective customer may require services from Defendants.   Further, like the situation in *Keds*

*Corp*, Defendants' infringing website is continuously available to Massachusetts' residents,

which is sufficient to meet the requirement of regular solicitation of business or engages in a

persistent course of conduct in Massachusetts.  Plaintiff is in the business of selling franchises,

which franchisees provide plumbing and sewer cleaning services, and Defendants' website that

directly infringing on Plaintiff's trademark and trade name directly interferes with Plaintiff's

franchising business.   Accordingly, personal jurisdiction is proper under the Massachusetts long-

arm statute.

### 2. Constitutional Due Process

In determining whether the exercise of specific personal jurisdiction will comport with

Constitutional Due Process, this jurisdiction considers whether a defendant has established

minimum contacts with this Commonwealth, so that the exercise of the jurisdiction does not

offend traditional notions of fair play and substantial justice.  *See International Shoe Co. v.*

*Washington*, 345 U.S. 310 (1945).  Such contact can be found by the existence of (1) the

underlying action relate to the defendant's forum state activities; (2) defendants' in-state conduct

represent a purposeful availment; and (3) the exercise of jurisdiction is reasonable.  *See Digital*

*Equip. Corp,* 960 F.Supp. 456 at 468.  This jurisdiction is more willing to find the satisfaction of

purposeful availment requirement in trademark infringement cases when the target of the alleged

trademark infringement is a Massachusetts company.  *See Venture Tape Corp. v. McGills Glass*

*Warehouse,* 292 F. Supp. 2d 230, 233 (D.Mass. 2003); *see also Digital Equip. Corp.*  960

F.Supp. 456 at 470 (constitutional purposeful availment due process tests are satisfied when the

defendant knew that plaintiff was in Massachusetts and allegedly caused trademark infringement that it knew would have an harmful effect on the plaintiff who owned the federal trademark).

In *Venture Tape Corp.,* the Court found that the defendant's purposeful availment was met without indication of sales to Massachusetts or evidence for targeting Massachusetts residents in any way.  *See Id.* at 233.   The Court reasoned that "while the mere existence of an interactive website might not be enough to establish personal jurisdiction…in a randomly chosen East Coast state…alleged misuse of trademarks belonging to a Massachusetts company is enough to constitute minimum contacts for the purpose of establishing personal jurisdiction." *See Id.* at 233.  *See also Northern Light Technology, Inc. v. Northern Lights Club*, 97 F. Supp.2d 96, 105 (D. Mass. 2000) (by registering a domain name allegedly infringing the plaintiff's trademark, the defendant is as much knowingly "sending" into Massachusetts the allegedly infringing  and therefore tortious uses of the plaintiff's trademark as is a telex, mail, or telephonic transmission…).

 In the present case, Defendants registered a domain name and created an interactive website, from their residence in Louisiana, infringing Plaintiff's federally registered trademarks. Defendants imbedded the terms "rooterman" and/or "arooterman" to register a domain name so called "abestrooterman.com" after they had actual knowledge of Plaintiff's federal registration of marks of *ROOTER MAN* and/or *A ROOTER MAN*.[1]  Defendants' infringing domain name and website was created subsequent to Plaintiff's registration of "rooterman.com" and "arooterman.com."  Defendants' website usually appears immediately following Plaintiff's website in lists generated by entering the terms "rooter man" at a major search engine, such as "Google."

---

[1] A ROOTER MAN mark was registered with the USPTO on or about August 20, 1991; ROOTER MAN mark was registered on or about September 3, 1991.  Both marks obtained uncontestable status in 1997.

Furthermore, similar to the above-reference cases, Defendants' infringing and interactive website is continuously available to Massachusetts residents, and Defendants well know that their website reaches Massachusetts and is accessible by Plaintiff. Defendants have been notified, on multiple occasions, with respect to their infringing conduct, but refused to stop. Although Defendants asserted that they were never physically present in this Commonwealth and did not conduct any work in Massachusetts, such fact is certainly not sufficient to prevent this Court from properly exercising personal jurisdiction based on the precedents in this jurisdiction.

Finally, it is reasonable for this Court to exercise personal jurisdiction over both Defendants given the fact that: (1) Defendant caused a tort in this Commonwealth; (2) Plaintiff, a Massachusetts' resident's trademark right has been violated by Defendants; and (3) Defendants retained a Boston law firm who filed a general appearance and Defendants failed to raise any defense of inconvenience of this particular venue in their first response to the present action.

## B. Defendants Failed to Show Good Cause to Set Aside Entry of Default Under Fed. R. Civ. P. 55(c).

Defendants failed to show good cause under Fed. R. Civ. P 55 (c), as a basis on which the Court may set the default aside. In determining a motion to set aside a default entry under Fed. R. Civ. P. 55(c), courts consider whether the default was intentional, whether setting it aside would prejudice the opposing party, whether the defense has merit, and the timing of the motion. *See Coon v. Grenier*, 867 F.2d 73 (1st Cir. 1989); *see also Leshore v. County of Worcester*, 945 F.2d 471, 473 (1st Cir. 1991).

As an initial matter, it is proper for courts to consider the length of time which has elapsed between the default and the defendant's motion to set aside the default. *See Dow Chem. Pac. Ltd. v. Rascator Maritime, S.A.*, 782 F.2d 329, 336 (2nd Cir. 1986) (district court did not err in considering the amount of time that had elapsed between the entry of default and the motion to

set it aside, since, although Rule 55(c) contains no guidelines, a motion under the rule must be made within a reasonable time); *see also Breuer Elec. Mfg. Co. v. Toronado Systems of America, Inc.*, 687 F.2d 182, 185 (7th Cir. 1982) (denial of motion to vacate default affirmed where defendant delayed two months before filing its motion; the court stated: "In order to have entry of default set aside, it was incumbent upon defendants to show…quick action to correct it…").

In the present case, default was entered on March 28, 2006 and Motion for Default Judgment was filed on or about May 24, 2006.  Defendants' Motion to Vacate Entry of Default was not filed until October 18, 2006, more than six (6) months after the entry of default. Between March 28, 2006 and October 18, 2006, Defendants took no action to correct the default.

Although Defendants heavily rely on the severe damage caused by the Katrina storm as an excuse for their late action, Plaintiff already provided Defendants with an extra forty two (42) days from the time when the answer or other responsive pleading was due before it moved for entry of default and fifty seven (57) days from entry of default to move for default judgment.  At the Court's request, Plaintiff submitted a proposed order for default judgment to the Court 135 days after filing its Motion for default judgment. There is no evidence of any reasonably prompt action by Defendants to correct the default.  Additionally, as showed in public records, other than relatively minor delay, Defendants' business was not adversely affected by the Katrina storm, and was re-established by spring of 2006.

Apart from jurisdictional and related grounds, the moving party must show a meritorious defense in seeking to set aside an entry of default.  *See General Contracting & Trading Co. v. Interpole, Inc.*, 899 F.2d 109, 112 (1st Cir. 1990); *see also Coon v. Grenier*, 867 F.2d 73 (1st Cir. 1989).  To show a meritorious defense, the defendant must set forth specific facts that, if proven at trial, would constitute a cognizable defense to the claim asserted.  *See Id.* at 77.  It is well

settled in this jurisdiction that a "pre-existing good faith user's [trademark] rights are frozen to the geographical location where the user has established a market penetration as of the date of [federal] registration." *See Thrifty Rent-A-Car System Inc., v. Thrift Cars, Inc.*, 831 F.2d 1177, 1181 (1st Cir. 1987).   Additionally, "such users are unable thereafter to acquire additional protection superior to that obtained by the federal registrant." *See Id.* at 1117.

As shown above, the defense of lack of personal jurisdiction is without merit.  In their Motion to Vacate Entry of Default, Defendants allege pre-existing use of the mark in dispute before the date of Plaintiff's federal registration.  Assuming that the truth of such facts could be proved, such common law trademark rights are limited to the Greater New Orleans and surroundings areas within the State of Louisiana.  The limited area defense raised by Defendants cannot cover Defendants' infringing expansion of the territories outside the State of Louisiana, which was subsequent to Plaintiff's federal registration and injured Plaintiff who is a Massachusetts resident.  Plaintiff's claims in the present case are based on Defendants' infringing registration of "abestrooterman.com" as their domain name and advertising for business using the name/mark of *ROOTER MAN* through the internet, all subsequent to Plaintiff's federal registration.  Without any statement of facts evidencing their prior good faith use of the marks in dispute outside the State of Louisiana, the facts in support of alleged common law trademark rights within Louisiana, even if proved, do not constitute a defense to Plaintiff's claims of trademark infringement of its federally registered trademarks and trade names.

Moreover, it is generally agreed that where the default results from the defendant's own neglect, or from the neglect of both the defendant and counsel, the courts are more reluctant to grant relief.  *See Taylor v. Boston and Taunton Transportation Co.*, 720 F.2d 731 (1st Cir. 1983); *see also Inryco, Inc. v. Metropolitan Engineering Co., Inc.*, 708 F.2d 1225 (7th Cir. 1983) (both

client and counsel neglectful). The *Taylor* Court denied the defendant's argument that the default was solely caused by his attorney and that he himself was not at fault. The Court reasoned that defendant was admittedly aware of the lawsuit and received default notice; and therefore when the attorney failed to timely notify the defendant of the status of the case, the reasonable action for the defendant "would have been to make some further inquiry either directly to the court or through a different attorney to ascertain the true status of the case." *See Id.* at 732.

Similar to the defendant in *Taylor* case, Defendants in the present case admitted in their affidavits that they were well aware of the present lawsuit. This action is not a surprise for them. After the Katrina storm, Defendants re-established their business and generated a considerable amount of work because of the storm by the spring of 2006. Defendants received default notice in late March, 2006, but took no to respond. Although Defendants heavily rely on the argument that their attorney, who allegedly had a unfortunate experience with his own personal life during the Katrina storm, misled them about the status of the case, they admitted that they realized that their counsel was not reliable and actually considered changing their counsel after they had received the notice of default from the Court in late March 2006. Knowing the communication problem with their counsel and the entry of the Default, Defendants took no action to contact the Court or search for another counsel since March 2006 until they recently retained a Boston firm to represent them in this case in Massachusetts Therefore, Defendants' argument that they were not at fault for the default is not convincing. Finally, Defendants' counsel was admittedly neglectful for the circumstances leading to Defendants' default.

Plaintiff will be prejudiced if the default is set aside because, during the time when the underlying action has been pending, Defendants' infringing website continued to operate and

Plaintiff continued to receive emails evidencing confusion as to the business relationship

between Defendants and Plaintiff.  Plaintiff has diligently pursued its claim in this Court.  As

such, unlike Defendants' statement that to set aside the default will merely cause some delay of

the Court's decision, Plaintiff will continue to suffer damages including without limitation

damages to its outstanding reputation in the field as franchisor of plumbing, sewer and drain

cleaning services.

**CONCLUSION**

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that this Court

deny Defendants' Motion to Vacate the Entry of Default an to Dismiss for Lack of Personal

Jurisdiction.

Respectfully Submitted
A Corp d/b/a ROOTER MAN
By its attorneys,

/s/ Juan Liu
Juan (Jenny) Liu, BBO# 655921
William H. McCarter, Jr., BBO#327620
P.O. Box 290
N. Billerica, MA 01862
Tel: (978) 670-0718
Fax: (978) 663-0061

Date: November 10, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that the above document filed through the ECF system shall be
sent electronically to the registered participants as identified on the Notice of Electronic Filing
and a true copy of the documents will be sent to those indicated as non-registered participants on
this 10th day of November 2006.

Date:   November 10, 2006                    /s/ Juan Liu
                                             Juan (Jenny) Liu

Exhibit 1 - 1

**Rooter Man**

○ Home
○ Contact Us
○ Calendar
○ News

**sales@abestrooterman.com**

### Contact Us

Please fill out the form and submit. Someone will be in touch

**Name**                                    **Title**

**Address (City,State,Zip)**

**Phone**                                   **Fax**

[Submit]

Click here to see current results.

Sign In

Powered by RealPages.com<sup>SM</sup>
Copyright © 2005 Intelligent Media Ventures, LLC
All Rights Reserved.

Exhibit 1 - 2

**Rooter Man**
- ○ Home
- ○ Contact Us
- ○ Calendar
- ○ News

**sales@abestrooterman.com**

## Contact Us
Please fill out the form and submit. Someone will be in touch

**Name**                                          **Title**

**Address (City,State,Zip)**

**Phone**                                         **Fax**

[ Submit ]

Click here to see current results.

Sign In

Website Design and Internet Advertising Powered by Intelligent Media Ventures, LLC
Copyright © 2006 Intelligent Media Ventures, LLC All Rights Reserved.

Welcome    Services    Products    About Us    Location    Contact Us    Calendar





"SINCE 1975"

"WHEN YOUR DRAINS DON'T WORK - WE DO!"®

## Location

Servicing the Greater New Orleans and Surrounding areas

Our office hours are 7 am to 12 am Monday through Saturday and Sunday 9 am to 10 pm.

If you have an emergency call **504-466-8581**

| | |
|---|---|
| New Orleans East / Gentilly / Lakeview / Carrollton / 9th Ward | **504-522-9536** |
| Metairie / Kenner / LaPlace | **504-466-8581** |
| Algiers / Belle Chasse / & All of the Westbank | **504-368-4070** |
| LaPlace / Norco / Luling / Destrehan / St. Rose | **985-652-0084** |
| Mandeville | **985-626-5045** |
| Slidell | **985-641-3525** |

If your area does not appear above, please do not hesitate to contact us to inquire if we service your

**For More Information Contact:**
A Best Sewer & Drain Service, Inc.
Rooter Man

**Postal address:**
2545 Delaware Avenue, Kenner, Louisiana 70062

**E-Mail:**
webmaster: sales@abestrooterman.com

1/26/2005

Welcome    Services    Products    About Us    Location    Contact Us    Calendar



Sewer & Drain
Cleaning Specialists

"SINCE 1975"

**WE CAN CABLE IT!**

**WE CAN VIDEO IT!**

WE CAN
J

WE
REF

**"WHEN YOUR DRAINS DON'T WORK - WE DO!"** ™

### Location

Servicing the Greater New Orleans and Surrounding areas

Our office hours are 7 am to 12 am Monday through Saturday and Sunday 9 am to 10 pm.

If you have an emergency call **504-466-8581**

| | |
|---|---|
| New Orleans East / Gentilly / Lakeview / Carrollton / 9th Ward | **504-522-9536** |
| Metairie / Kenner / LaPlace | **504-466-8581** |
| Algiers / Belle Chasse / & All of the Westbank | **504-368-4070** |
| LaPlace / Norco / Luling / Destrehan / St. Rose | **985-652-0084** |
| Mandeville | **985-626-5045** |
| Slidell | **985-641-3525** |

If your area does not appear above, please do not hesitate to contact us to inquire if we service your

**For More Information Contact:**
A Best Sewer & Drain Service, Inc.
Rooter Man

**Postal address:**
2545 Delaware Avenue, Kenner, Louisiana 70062

**E-Mail:**
webmaster: sales@abestrooterman.com

Exhibit 3

# BACK FROM THE WRECKAGE

### A family-owned company in New Orleans uses ingenuity, hard work and a solid reputation to rebuild after Hurricane Katrina

#### By Erik Gunn



Scene outside a Best Sewer from the aftermath of the 30th clearing out debris in a house in New Orleans, La., damaged by Hurricane Katrina.
(Photos by Sean Gardner)

In the 1970s, Veronica LaVenia's father built his New Orleans drain cleaning business from the ground up. In the aftermath of Hurricane Katrina, Veronica (Ronnie) and her family are doing it all over again.

Until August 29 of last year, the family's business, A Best Sewer & Drain Service Inc., had 25 employees and split its business 60-40 between drain cleaning and home plumbing repairs.

The company had a solid reputation in and around New Orleans with plenty of repeat customers. With a hefty set of accounts in Orleans Parish and surrounding area, the business was beginning to open up new territory in nearby St. Tammany Parish.

Then came the storm. LaVenia, her parents, and others in her family escaped for Florida where they stayed with relatives. They weren't sure what they would come back to. "Our whole family's tied to this business," LaVenia says. "If we lost everything, we all lost everything."

"I remember looking at my father. You could just see it in his face. That business was something he worked his whole life for. But my father is very strong. His attitude was: We'll get back. It will be a lot of work, and if we have to start over, we'll start over."

And that's what they've done. Less than a year after Katrina wiped out nearly half of the company's market territory and forced the family to start over almost from scratch, A Best Sewer & Drain Service is coming back. By spring, employment was back to 50 percent of its original level, and Ronnie LaVenia was busy recruiting more workers. And business? Katrina left behind something besides devastation: plenty of work.

#### Luck and hard work

A Best Sewer survived the storm, thanks to a combination of luck, hard work, and a return on the investment of 30 years in business. The luck was that the hard business assets — the office and vehicles — weren't seriously damaged. The hard work came because everyone in the family — Ronnie, brothers Guy and Paul LaVenia, and sister Christine pitched in together. Their renewed success is testament to the effort and to the value the company's name and reputation built over three decades.

Guy LaVenia moved his wife, Alyce, and the couple's four children to New Orleans in the early 1970s when daughter Veronica was 10. A supervisor for an envelope manufacturer in New York City, Guy LaVenia decided to change careers rather than accept a transfer to Ohio or New Jersey. A brother-in-law with a franchise operation persuaded him to enter the drain cleaning business.

As his daughter notes, A Best Sewer has become a family business in every sense. Her sister Christine works in the office; her brothers are field supervisors in drain cleaning and plumbing. Veronica, 43, entered the business 11 years ago. She now manages day-to-day operations, while her parents remain as owners: the elder Guy as president and Alyce as secretary-treasurer.

The firm's equipment includes two US Jetting high-pressure, trailer-mounted waterjet units (4,000 psi/18 gpm), a Harben truck jetter (4000 psi/18 gpm), and eight mini-jets. Each service van carries a GatorCam video inspection camera

"I remember looking at my father. You could just see it in his face that business was something he worked his whole life for. But my father is very strong. His attitude was, we'll get back. It will be a lot of work, and if we have to start over, we'll start over."
— Veronica LaVenia

## PROFILE

### A BEST SEWER & DRAIN SERVICE INC.
### KENNER, LA.

| | |
|---|---|
| OWNER | Guy LaVenia |
| MANAGER | Veronica LaVenia |
| SPECIALTIES | Sewer and drain cleaning; plumbing repair |
| SERVICE AREA | New Orleans and surroundings |
| EMPLOYEES | 13 |